```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF TENNESSEE
                      WESTERN DIVISION
```
_____

| | | |
|---|---|---|
| MICHAEL K. MATTOX, SR., | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 19-2154-MSN-dkv |
| | ) | |
| UNITED STATES OF AMERICA; | ) | |
| STATE OF KANSAS; | ) | |
| TOPEKA POLICE DEPARTMENT; | ) | |
| DOUGLAS COUNTY JAIL; | ) | |
| SHAWNEE COUNTY JAIL; | ) | |
| KANSAS DEPARTMENT OF CORRECTIONS; | ) | |
| LARNED STATE HOSPITAL, | ) | |
| | ) | |
|     Defendants. | ) | |

_____

```
      ORDER GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS
                             AND
       REPORT AND RECOMMENDATION FOR SUA SPONTE DISMISSAL
```
_____

On March 6, 2019, the plaintiff, Michael Mattox, filed a *pro se* complaint titled "Civil Lawsuit" against the United States of America, the State of Kansas, the Topeka Police Department, the Douglas County Jail, the Shawnee County Jail, the Kansas Department of Corrections, and Larned State Hospital (collectively, "the defendants"). (Compl., ECF No. 1.) This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order. 2013-05, Apr. 29, 2013.)

Accompanying the complaint was a motion seeking leave to proceed *in forma pauperis*. (ECF No. 2.) The information set forth in the affidavit in support of the motion for leave to proceed *in forma pauperis* satisfies Mattox's burden of demonstrating that he is unable to pay the civil filing fee. Accordingly, the motion to proceed *in forma pauperis* is GRANTED.

For the reasons that follow, it is recommended that this case be dismissed *sua sponte* for failure to state a claim.

I.  PROCEDURAL HISTORY AND PROPOSED FINDINGS OF FACT

In his sixteen-page, type-written *pro se* complaint, Mattox erratically describes the events precipitating his conviction for criminal discharge of a firearm and the reckless second-degree murder of John Lane. (Compl., ECF No. 1.) As the Kansas Supreme Court fully set out the facts of this case in *State v. Mattox*, 124 P.3d 6 (2005)(*Mattox I*) and *Mattox v. State*, 267 P.3d 746 (2011)(*Mattox II*), only the relevant facts are discussed *infra*.

In October of 2001, the Topeka Police Department found John Lane dead in his vehicle with two gunshot wounds to his head. Five days later, police arrested Mattox on charges unrelated to Lane's murder. After reading Mattox his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), Mattox stated that he wanted to speak with a lawyer. While being booked for criminal trespass charges, Mattox told a corrections officer information regarding Lane's murder. As the corrections officer typed up the information Mattox relayed to

2

him, Mattox began hand-writing the story himself.  Subsequently, police detectives conducted a videotaped interview of Mattox.  The officers did not read Mattox his *Miranda* rights again before conducting the interview.  In his complaint, Mattox asserts that after he reinvoked his *Miranda* rights during this interview, the officers continued to question him.  At trial, all of Mattox's statements were admitted into evidence and, in April of 2002, a jury convicted Mattox of criminal discharge of a firearm and the reckless second-degree murder of John Lane Mattox.  Mattox was sentenced on June 13, 2002 to prison sentence of 176 months.  On June 1, 2016, Mattox was released from incarceration.  (Compl. 1, ECF No. 1.)

On appeal, the Kansas Court of Appeals found that Mattox did not knowingly and voluntarily waive his *Miranda* rights and reversed Mattox's convictions.  However, on December 9, 2005, the Kansas Supreme Court held that the statements Mattox made on the videotaped confession were made knowingly and voluntarily, reversing the appellate court and reinstating his convictions.  *Mattox I*, 124 P.3d at 18.  The Kansas Supreme Court declined to reach the merits of whether Mattox reinvoked his right to counsel at the beginning of his videotaped interview, finding that Mattox had abandoned the issue by failing to sufficiently brief it.  *Id.*

Mattox then filed a motion attacking the constitutionality of his sentence pursuant to Kan. Stat. § 60-1507, alleging ineffective

assistance of counsel due to his appellate counsel's abandonment of the reinvocation issue on his direct appeal. Although appellate counsel admitted error, the Kansas Supreme Court held that any errors counsel made with regard to the admissibility of Mattox's statements to the detectives were harmless because "the exclusion of those statements would have had no impact on the outcome of his trial given the other evidence against him." *Mattox II*, 267 P.3d at 751. On February 8, 2018, the United States District Court of Kansas denied Mattox's habeas corpus petition. *Mattox v. McKune*, No. 12-cv-3121-SAC, 2014 WL 2772977, at *1 (D. Kan. June 19, 2014). Mattox then filed another appeal, this time claiming that his trial and appellate counsel were "ineffective for failing to obtain a psychological evaluation and by failing to argue that he could not have made a knowing and intelligent waiver of his right to counsel because he was under a schizophrenic episodic attack." *Mattox v. Kansas*, 410 P.3d 947 (Kan. Ct. App. 2018), *review denied* (Oct. 30, 2018). Mattox also appealed on the grounds that his postconviction counsel was ineffective because he failed to argue that Mattox had not voluntarily or knowingly given the detectives his handwritten statement, contrary to the Kansas Supreme Court's conclusion. *Id.*

The issues in Mattox's complaint primarily relate to the admissibility of the statements Mattox made to the corrections officer, (*id.* at 4); the admissibility of the videotaped statements Mattox made to detectives, (*id.* at 6); the admissibility of Mattox's

4

handwritten statements, (*id.* at 13); Mattox's inability to waive his right to counsel during these police interrogations due to an alleged schizophrenic episode, (*id.* at 7); and the ineffective assistance of Mattox's trial, appellate, and postconviction counsel, (*id.* at 6). Mattox alleges his First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Thirteenth, and Fourteenth Amendment rights were violated, which he attributes to the United States of America, the State of Kansas, the Topeka Police Department, the Douglas County Jail, the Shawnee County Jail, the Kansas Department of Corrections, and Larned State Hospital. (*Id.* at 1.)

Mattox seeks compensatory damages in the amount of twenty-two zillion dollars, at a minimum, for mental anguish, emotional pain and suffering, physical pain and suffering, and various other grievances which Mattox describes over three pages of his complaint. (*Id.* 1-3.) Additionally, Mattox seeks injunctive relief in the form of court orders instating Mattox as the "landlord of Kansas . . . and over the United States"; making Mattox "the CEO" of the Topeka Police Department, the Douglas County Jail, the Shawnee County Jail, the Kansas Department of Corrections, and the Larned State Hospital; requiring courts to use Mattox's software program to "eliminate wrong decisions via human error of judges"; and various other far-fetched requests of that nature. (*Id.* at 2-3.)

II. PROPOSED CONCLUSIONS OF LAW

A.   28 U.S.C. § 1915(e)(2)(B) Screening

Pursuant to Local Rule 4.1(b)(2), service will not issue in a *pro se* case where the *pro se* plaintiff has been granted leave to proceed *in forma pauperis* until the complaint has been screened under 28 U.S.C. § 1915(e)(2)(B).  The clerk is authorized to issue summonses to *pro se* litigants only after that review is complete and an order of the court issues.  This report and recommendation will constitute the court's screening of Mattox's complaint.

The court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action:

   (i)    is frivolous or malicious;

   (ii)   fails to state a claim on which relief may be granted; or

   (iii)  seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

B.   Standard of Review for Failure to State a Claim

In assessing whether Mattox's complaint states a claim on which relief may be granted, the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied.  *See Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).  To survive Rule 12(b)(6) following *Iqbal* and *Twombly*, a complaint must "'contain sufficient factual matter, accepted as true, to state a claim to relief that

is plausible on its face.'" *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009)(quoting *Iqbal*, 556 U.S. at 678). The court "construes the complaint in a light most favorable to the plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)(quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Further, the courts are not required to act as counsel for a *pro se* litigant; nor are they required to sort through the pleadings to create a claim on behalf of the plaintiff. *Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("[D]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim which [a

plaintiff] has not spelled out in his pleading." (internal quotation marks omitted)). Requiring the court "to ferret out the strongest cause of action on behalf of *pro se* litigants . . . would transform the courts from neutral arbiters of disputes into advocates for a particular party." *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011). "While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue." *Id.*

C. <u>Cognizable Claims Under 42 U.S.C. § 1983</u>

The court construes Mattox's "Civil Lawsuit" as a complaint against the defendants pursuant to 42 U.S.C. § 1983 for violations of the First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Thirteenth, and Fourteenth Amendments. "Ordinarily, a plaintiff has no cause of action under § 1983 unless and until his conviction or sentence are invalidated by the grant of a writ of habeas corpus. *Clifton v. Patrick*, No. 17-cv-01035-STA-egb, 2017 WL 4452524, at *4 (W.D. Tenn. Oct. 5, 2017), *appeal dismissed*, No. 17-6262, 2018 WL 565933 (6th Cir. Jan. 24, 2018)(citing *Heck v. Humphrey*, 512 U.S. 477, 489 (1994)). As the Sixth Circuit has explained:

> Claims which challenge the validity of a state conviction or sentence are not cognizable under § 1983 in the absence of a demonstration that the criminal conviction or sentence in state court "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such

> determination, or called into question by a federal court's issuance of a writ of habeas corpus."

*Wheat v. Ohio*, 23 F. App'x 441, 443 (6th Cir. 2001)(quoting *Heck,* 512 U.S. at 486–87). Therefore, a "§ 1983 action is barred, absent prior invalidation of a confinement or its duration, 'if success in [the § 1983] action would necessarily demonstrate the invalidity of confinement or its duration.'" *Id.* (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005)). Mattox does not allege that his convictions have been reversed, expunged, declared invalid, or called into question by a federal writ of habeas corpus. To the contrary, in his complaint Mattox states that the courts "failed at appeal to overturn my conviction at the highest court levels," (Compl. 1, ECF No. 1), and requests injunctive relief in the form of a court order requiring "the Kansas Supreme Court overturn all such cases," (*id.* at 14). Therefore, Mattox's claims challenging the validity of his convictions are not cognizable under 42 U.S.C. § 1983.

D.  <u>Statute of Limitations for 42 U.S.C. § 1983 Claims</u>

To the extent that Mattox asserts claims that are not challenging the validity of his convictions, they are time-barred. "The statute of limitations applicable to a § 1983 action is the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th

Cir. 2007). Actions for personal injuries in Kansas have a two-year limitation period. Kan. Stat. Ann. § 60-513(a)(4); *see also Johnson v. Johnson Cty. Com. Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991) ("[T]he appropriate statute of limitations for § 1983 actions arising in Kansas is two years, under Kan. Stat. Ann. § 60-513(a)(4).").

"Although state law provides the statute of limitations to be applied in a § 1983 damages action, federal law governs the question of when that limitations period begins to run." *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984)(citations omitted). "The statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* at 273 (citations omitted). Thus, the statute of limitation period for a claim arising under 42 U.S.C. § 1983 begins to run on the date the claimant becomes aware of the constitutional violation. *Howard v. Rea*, 111 F. App'x 419, 421 (6th Cir. 2004). In other words, to determine when a statute of limitations begins to run, the court must identify "what event should have alerted the typical lay person to protect his or her rights." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007)(quoting *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 519, 520 (6th Cir. 1997)).

All of the events giving rise to Mattox's claims occurred between April of 2002 and June 1, 2016, the period of Mattox's

incarceration. Upon his release, Mattox was aware of the matters precipitating his cause of action. *See Massie v. Kentucky*, No. 13-CV-00626-JHM, 2013 WL 6017438, at *4 (W.D. Ky. Nov. 13, 2013). Thus, the statute of limitations for Mattox's remaining § 1983 claims began running on June 1, 2016, giving him until June 1, 2018 to litigate these matters under § 1983. The instant action, however, was not filed until March 6, 2019. Mattox's claims are therefore time-barred.

III. RECOMMENDATION

For the foregoing reasons, the court recommends that Mattox's complaint be dismissed *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

Respectfully submitted this 26th day of August, 2019.

                                     _s/ Diane K. Vescovo_____
                                     DIANE K. VESCOVO
                                     Chief United States Magistrate Judge

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.